UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA D., | Case No. CV 19-5642-SP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| ANDREW M. SAUL, Commissioner of Social Security Administration, | |
| Defendant. | |

**I.**

**INTRODUCTION**

On June 28, 2019, plaintiff Theresa D. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents four disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") improperly rejected plaintiff's testimony; (2)

whether the ALJ improperly rejected lay witness testimony; (3) whether the ALJ formulated a proper residual functional capacity ("RFC"); and (4) whether the ALJ posed an erroneous hypothetical question to the vocational expert concerning plaintiff's ability to perform her past relevant work. Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 5-14; *see* Defendant's Memorandum in Support of Answer ("D. Mem.") at 2-5.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ: properly considered and discounted plaintiff's testimony; failed to provide a germane reason to discount the lay testimony, but such error was harmless; did not err in formulating plaintiff's RFC; and did not err at step four. The court therefore affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 56 years old on the alleged disability onset date, is a high school graduate. AR at 36, 69. Plaintiff has past relevant work as an accounting clerk and medical quoting support worker. *Id.* at 26, 59.

On December 8, 2015, plaintiff filed an application for a period of disability and DIB, alleging an onset date of August 18, 2014. *Id.* at 69. Plaintiff claimed she suffered from fainting spells, facial numbness, a blood disorder, thyroid issues, confusion, forgetfulness, inability to drive, headaches, anxiety, and liver problems. *Id.* at 69-70. Plaintiff's application was initially denied on May 24, 2016. *Id.* at 81.

Plaintiff requested a hearing, which the assigned ALJ held on April 19, 2018. *Id.* at 32, 87. Plaintiff, represented by counsel, appeared and testified at the hearing. *Id.* at 36-54, 57-59. The ALJ also heard testimony from plaintiff's ex-sister-in-law and Randi Langford-Hetrick, a vocational expert. *Id.* at 55-61. On

July 24, 2018, the ALJ denied plaintiff's claim for benefits. *Id.* at 15-27.

Applying the well-established five-step sequential evaluation process, the ALJ found, at step one, that plaintiff did not engage in substantial gainful activity from August 18, 2014, the alleged onset date, through December 31, 2016, the date last insured. *Id.* at 17.

At step two, the ALJ found plaintiff suffered from one severe impairment, a history of migraine headaches. *Id.* The ALJ also determined plaintiff suffered from several non-severe impairments, including an anxiety disorder, arthralgia, facial nerve impairment, iron deficiency anemia, hypothyroidism, fainting spells, dizziness, fatigue, abnormal liver function, and the effects of her medications. *See id.* at 17-19.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 20.

The ALJ then assessed plaintiff's RFC,[1] and determined she had the RFC to perform a full range of work at all exertional levels, except for work with dangerous machinery or at unprotected heights. *Id.*

The ALJ found, at step four, that plaintiff was capable of performing her past relevant work as an accounting clerk and as a medical quoting support worker. *Id.* at 26. Thus, the ALJ concluded plaintiff was not under a disability, as defined in the Social Security Act, at any time from August 18, 2014 through December 31, 2016. *Id.* at 27.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review. *Id.* at 1-3. Accordingly, the ALJ's decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035 (citation omitted). Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (internal quotation marks omitted). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ." *Id.* (internal quotation marks omitted).

## IV.

## **DISCUSSION**

### A. The ALJ Properly Evaluated Plaintiff's Testimony

Plaintiff argues the ALJ improperly rejected her testimony that she: does not drive because her doctor told her not to; has a headache every day, blurry vision, and confusion; cannot remember things; forgets what she is doing or where she is; goes completely blank; faints; can walk on some days but does not even have the strength to open a bottle of Pepsi. P. Mem. at 9; *see* AR at 37-40. According to plaintiff, the ALJ rejected her testimony due to his erroneous conclusion that plaintiff continued driving despite her doctor's orders. P. Mem. at 9. She also complains the ALJ failed to explain his conclusion that there was no objective evidence supporting plaintiff's claimed symptoms. *Id.* at 10. For these reasons, plaintiff asks the court to credit her testimony as true. *Id.*

In response, defendant argues substantial evidence supports the ALJ's decision to discount plaintiff's testimony. D. Mem. at 4. Defendant maintains that plaintiff's testimony regarding whether she drove was inconsistent, and thus cast doubt on her fainting allegations. *Id.* at 3-4. Defendant also argues the ALJ provided other reasons for discounting plaintiff's testimony, such as her gap in treatment between December 2015 and September 2017. *Id.* at 4.

As an initial matter, the court looks to Social Security Ruling ("SSR") 16-3p for guidance in evaluating plaintiff's alleged symptoms. SSR 16-3p rescinded and superseded SSR 96-7p and applies to decisions made on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). "Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration." *Id.* (citing 20 C.F.R. § 402.35(b)(1)).

In adopting SSR 16-3p, the Social Security Administration sought to "clarify

that subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2.

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (internal quotation marks and alterations omitted).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Second, if the claimant satisfies the first step, and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id.* In assessing intensity and persistence, the ALJ may consider: a claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *Id.* (citing 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4; *Smolen v. Chater*, 80 F.3d 1273, 1283-84 & n.8 (9th Cir. 1996)). If the ALJ rejects

the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so. *Id.* at 921, 929.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 22. At the second step, the ALJ discounted plaintiff's symptom testimony based on: (1) lack of objective medical evidence supporting her complaints of disabling impairment; (2) her failure to seek treatment for any impairment between December 2015 and September 2017; and (3) inconsistencies in her testimony about driving. *Id.*; *see id.* at 21. Because plaintiff cleared step one and there was no evidence of malingering, the ALJ's reasons for discounting plaintiff's symptom testimony had to be specific, clear, and convincing and supported by substantial evidence.

### 1. **Objective Medical Evidence**

The first reason the ALJ gave for discounting plaintiff's testimony was that many of her complaints of disabling impairment lack objective support from medical examinations and testing. *Id.* at 22. Plaintiff argues the ALJ failed to properly explain his determination that the objective medical evidence did not support plaintiff's testimony regarding the intensity and persistence of her symptoms. P. Mem. at 10.

"The intensity, persistence, and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence." SSR 16-3p, 2017 WL 5180304, at *5. Thus, ALJs can consider whether the objective medical evidence supports a claimant's subjective symptom testimony. *See id.* Nevertheless, a lack of objective medical evidence cannot provide the only basis to reject a claimant's testimony. *Trevizo*, 871 F.3d at 679 (citation omitted).

The ALJ's explanation of the objective medical evidence was not vague as

plaintiff argues. In fact, he outlined several medical reports and opinions supporting his conclusion that plaintiff's symptom testimony was "not entirely consistent with the medical evidence." *See* AR at 22. For example, the ALJ summarized the following medical evidence:

- June 9, 2014 examination by Dr. Daniel Lewis: Dr. Lewis reported normal extra-ocular movements, normal heart and bowel sounds, normal gait and stance, normal upper and lower extremity strength, and normal reflexes. *See id.* at 23, 421.
- October 24, 2014 examination by Dr. Lewis: Plaintiff reported she felt 50-60 percent better with her thyroid medication and felt less fatigue, headaches, dizziness, and dry skin. *See id.* at 23, 410.
- December 22, 2014 examination by Drs. Lewis and Bagga Dilprit: Doctors noted recent laboratory tests showed very mild anemia and determined plaintiff did not require any intervention at that time. *See id.* at 23, 405.
- August 4, 2015 examination by Dr. Lewis: Dr. Lewis reported normal physical exam results. *See id.* at 23, 392.
- November 13, 2015 brain CT scan: Scan showed normal results other than "atherosclerotic calcifications within bilateral distal internal carotid arteries." *See id.* at 23, 440.
- December 1, 2015 examination by Dr. Madhavi Lekkala: plaintiff reported "no more episodes of dizziness and confusion." *See id.* at 24, 376.
- December 14, 2015 brain MRI: MRI showed normal results other than "very mild small vessel disease" and "minimal mucosal thickening in the paranasal sinuses." *See id.* at 23-24,

307.
- March 17, 2016 EEG by Dr. Lewis: EEG showed normal results in the awake and drowsy states. *See id.* at 24, 366.
- April 25, 2016 psychiatric evaluation by Dr. Edward Ritvo: Dr. Ritvo diagnosed plaintiff with mild generalized anxiety disorder and assigned her a GAF score of 65, which indicates only mild symptoms or some difficulty in social or occupational functioning but generally good function. *See id.* at 24-25, 349-53.
- May 5, 2016 internal medicine exam by Dr. Sohail Afra: Dr. Afra reported "unremarkable" physical examination results and recommended no impairment-related physical restrictions. *See id.* at 25, 357-62.
- September 28, 2017 examination by Dr. Carmen Simmonds: Dr. Simmonds reported a normal physical exam. *See id.* at 25, 624.

Aside from broadly arguing that the ALJ's reasoning was vague, plaintiff does not dispute any of the mentioned objective medical evidence. Accordingly, the court finds the ALJ provided sufficient specific, clear, and convincing reasons, rooted in substantial evidence, to discount plaintiff's symptom testimony based on the objective medical evidence.

### 2. **Failure to Seek Medical Treatment**

The second reason the ALJ gave for discounting plaintiff's testimony – and the reason the ALJ characterized as "most significant" – was plaintiff's failure to seek treatment for any impairment from December 2015 to September 2017. AR at 22; *see* SSR 16-3p, 2017 WL 5180304, at *9 ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the

individual's subjective complaints, . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

Inability to afford treatment is not a basis to discount subjective symptom testimony. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (failure to seek treatment may be a basis for discounting complaints, unless there was a good reason for not doing so such as lack of funds). But the ALJ took this possibility into account, and specifically noted the absence of a report of treatment from even "low or no cost clinics during this period." AR at 22. Plaintiff does not dispute her failure to seek treatment during this period. Indeed, plaintiff does not challenge, or even acknowledge, this reason for discounting her testimony. Thus, she waived any argument that this reason was invalid. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (arguments not raised before the district court are generally waived).

### 3. **Inconsistent Testimony**

In addition to lack of supporting medical evidence and a failure to seek treatment, the ALJ also generally gave inconsistencies between plaintiff's symptom statements and other evidence in the record as a reason to discount her testimony. AR at 22. The principle inconsistency cited by the ALJ is the reason plaintiff primarily attacks: inconsistency in her testimony regarding whether she continued driving after her doctor told her not to. *See* AR at 21; P. Mem. at 9. Although the ALJ did not rely on this inconsistency in discounting plaintiff's testimony nearly as heavily as plaintiff argues, it nonetheless is fairly considered one of the reasons given.

In evaluating the claimant's symptom testimony, the ALJ may consider the consistency of the claimant's statements. *Christine G.*, 402 F. Supp. 3d at 922. Nevertheless, "inconsistencies in an individual's statements made at varying times

10

does not necessarily mean they are inaccurate [because] [s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." SSR 16-3p, 2017 WL 5180304, at *9; *Christine G.*, 402 F. Supp. 3d at 922.

The ALJ concluded there were inconsistencies in plaintiff's testimony about her driving despite suffering fainting spells. The ALJ noted plaintiff testified she did not drive due to her unpredictable fainting spells. AR at 21. The ALJ further found plaintiff contradicted this testimony in her 2014 report to the state agency (*id.* at 19), at her consultative examination on April 25, 2016 (*id.* at 19, 351), and in her May 11, 2016 function report (*id.* at 21, 238).

The record shows that plaintiff complained of fainting spells as early as January 31, 2014. *Id.* at 438-39. She continued to report fainting episodes at several of her doctor appointments in 2014 and 2015, and claimed to have passed out while visiting Disneyland in late 2015. *Id.* at 383-85, 406-07, 421-22. She reported that in 2016, her doctor instructed her to stop driving due to her unpredictable fainting spells. *See id.* at 32, 37, 238.

There is no evidence, however, that plaintiff ever testified she stopped driving as early as 2014. Thus, even if it is true that in 2014 she told the state agency she drove,[2] that statement would not necessarily be inconsistent with her subsequent statements that she did not drive. Moreover, the ALJ's reliance on the May 11, 2016 function report is misplaced. In it, plaintiff explained that although she can drive, her doctor told her not to do so. *Id.* at 238. She also explicitly stated she only rode in cars for travel and did not check the box that would have indicated she drove herself. *Id.* On the other hand, it appears that during her April 25, 2016 consultative examination, plaintiff told the psychiatrist that she drives. *See id.* at 351. This is the only clear inconsistency in the record regarding her driving.

---

[2] The ALJ did not cite the source for this alleged 2014 statement, and the court was unable to find such a statement in the record.

11

As inconsistencies go, this is fairly weak. And there is no indication the ALJ considered whether this isolated inconsistency could be due to the possibility that plaintiff's symptoms varied in intensity and persistence. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." (citation omitted)); *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) ("[T]he ALJ selectively relied on some entries in Holohan's records . . . and ignored the many others that indicated continued, severe impairment."). Indeed, plaintiff's medical records show that while she complained repeatedly about her fainting spells (*see, e.g.*, AR at 383, 387, 421, 438), there were other medical appointments at which she did not mention that symptom (*see, e.g., id.* at 389, 401, 418 ,436).

As such, this inconsistency regarding plaintiff's statements about driving would not by itself be a clear and convincing reason to discount plaintiff's testimony. But as noted, this was not the only, or even the primary, reason the ALJ cited for discounting plaintiff's symptom testimony. The ALJ gave two other reasons that were clear and convincing. Accordingly, the ALJ did not err in discounting plaintiff's testimony.

**B.      The ALJ's Error in Considering the Lay Testimony Was Harmless**

Plaintiff argues the ALJ also improperly rejected her sister's written testimony and her ex-sister-in-law's testimony at the hearing. P. Mem. at 11-12. Defendant responds the ALJ properly discounted lay witness testimony about plaintiff's symptoms for the same reasons he discounted plaintiff's own symptom testimony. *See* D. Mem. at 4-5.

Once an impairment has been adequately verified by acceptable sources, the

ALJ may consider evidence of the severity and functional impact of the impairment from "other sources," including spouses, other relatives, friends, employers, and neighbors. SSR 06-03p, 71 Fed. Reg. 45593-03, 45593-94 (Aug. 9, 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ("[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence . . . and therefore cannot be disregarded without comment." (citations omitted)). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness" (*Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)), unless the lay testimony is substantially similar to a claimant's validly discredited allegations (*Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009)).

Here, in a May 9, 2016 Third Party Function Report, plaintiff's sister reported she spent about 75 percent of her time with plaintiff. *See* AR at 226. According to the sister, plaintiff faints a lot, is often very confused, and is always tired. *See id.* at 226-27. She noted plaintiff rarely has a "good day." *Id.* at 226. She also confirmed that plaintiff does not drive. *See id.* at 229.

At the hearing, plaintiff's ex-sister-in-law testified plaintiff has sudden fainting spells lasting 10 to 15 minutes. *See id.* at 56. It allegedly takes plaintiff up to 20 minutes to recover once she wakes up. *See id.* at 56-57.

Looking at the ALJ's decision, it appears he only considered the sister's written testimony.[3] *Id.* at 26. The ALJ gave limited weight to the sister's testimony because it constituted a lay opinion based on casual observation rather than objective medical findings and testing. *Id.* The ALJ also concluded that the sister's opinion was based on family loyalty and was expected to be supportive. *Id.* The ALJ made no mention of the ex-sister-in-law's hearing testimony.

---

[3] The ALJ appears to mistakenly refer to this as the "mother's opinions." *See* AR at 26.

13

The ALJ's stated reasons to discount the sister's testimony, are not germane. Bias in the abstract due to a familial relationship is not a germane reason to discredit lay testimony. *Dale v. Colvin*, 823 F.3d 941, 944-45 (9th Cir. 2016) (citation omitted). Moreover, the ALJ erred in discounting the sister's statements simply because they constituted lay testimony. As the Ninth Circuit has recognized, lay testimony is not only competent evidence, but it is also particularly useful in cases such as this where plaintiff's symptoms are not entirely supported by the objective medical evidence. *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009); *Nguyen*, 100 F.3d at 1467.

As for the ex-sister-in-law's testimony, the ALJ did not even mention it, much less provide a germane reason for discounting it. Therefore, the ALJ erred. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (finding ALJ erred because "lay witness testimony *cannot* be disregarded without comment") (citation and internal quotation marks omitted), *superseded by regulation on other grounds*. The question is whether, as defendant argues, the ALJ's failure to provide germane reasons to discount the sister's testimony and disregard the ex-sister-in-law's testimony was harmless.

"Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in discounting the lay witness testimony is harmless. *Molina*, 674 F.3d at 1117. Here, the testimony offered by the sister and ex-sister-in-law – that plaintiff faints a lot very suddenly, is regularly confused and tired, and that she does not drive – are all things plaintiff testified to herself. *See* AR at 37-40, 56-57, 226-29. As discussed above, the ALJ discounted plaintiff's testimony as not supported by the objective medical evidence and undermined by her failure to seek treatment from December 2015 to September 2017. These reasons apply equally to the lay

testimony in this case.

Accordingly, although the ALJ failed to provide germane reasons to discount the lay testimony here, that error was harmless.

### C. The ALJ Properly Considered All Objective Medical Evidence in Formulating the RFC

Plaintiff argues the ALJ did not formulate a proper RFC because he rejected plaintiff's impairments of pre-syncope, dizziness, numbness, confusional state, loss of consciousness, and fatigue. P. Mem. at 6. She contends the ALJ erred in finding no objective evidence to support the presence of these symptoms and claims the ALJ did not set forth any reasons to reach that conclusion. *See id.* at 6-8.

In response, defendant argues plaintiff fails to identify a limitation the ALJ should have found in connection with plaintiff's atherosclerosis diagnosis. *See* D. Mem. at 2. Defendant further contends that plaintiff should have proposed an alternative RFC or explained how the limitations ordered by the ALJ – no work with dangerous machinery or at unprotected heights – fail to accommodate plaintiff's medical complaints. *See id.*

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1)-(2). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.*

Plaintiff's argument is somewhat confusing because it conflates symptoms with impairments. Contrary to plaintiff's contention, the ALJ found "medically determinable impairments [that] could reasonably be expected to cause the alleged symptoms," including fainting, dizziness, numbness, confusion, and fatigue. *See* AR at 17-22. It appears that what plaintiff is truly arguing is that the ALJ should have formulated an RFC that took into account plaintiff's more serious version of the intensity, persistence, and limiting effects of her symptoms.

In support of her argument, plaintiff points to her diagnosis of cerebral atherosclerosis in the record. P. Mem. at 6. She contends that this diagnosis necessarily shows she also suffers from carotid artery disease. *See id.* at 6-7. According to her, this condition can cause serious symptoms of a stroke. *See id.* at 7.

As the court previously determined, substantial evidence supports the ALJ's determination that the objective medical evidence is inconsistent with plaintiff's symptom testimony. Plaintiff's reference to her cerebral atherosclerosis diagnosis does not change that conclusion. By her own definition, cerebral atherosclerosis "usually doesn't cause signs and symptoms until it severely narrows or totally blocks an artery." *See id.* at 6-7. In plaintiff's case, however, her brain MRI showed only "very mild small vessel disease" and there was no significant probative evidence in the MRI or CAT scan reports to support plaintiff's claim that her cerebral atherosclerosis was so severe as to cause any symptoms at all. *See* AR at 23-24, 307, 440.

Accordingly, and given that the court found no error by the ALJ in discounting plaintiff's subjective symptom testimony, the ALJ did not err in formulating plaintiff's RFC.

### D. The ALJ Did Not Err at Step Four

Finally, plaintiff contends the ALJ posed an erroneous hypothetical question to the vocational expert that failed to account for the seriousness of her impairments. *See* P. Mem. at 14. For this reason, plaintiff argues the vocational expert's opinion based on the incomplete hypothetical has no evidentiary value. *See id.*

An ALJ may rely on the testimony of a vocational expert to determine whether a claimant retains the ability to perform past relevant work at step four, or other work in the national or regional economy at step five. *See Osenbrock v.*

*Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). In creating a hypothetical for the vocational expert, the ALJ is required to include only those limitations which are supported by substantial evidence. *See id.* at 1163-65.

The hypothetical posed to the vocational expert here was consistent with the RFC the ALJ determined for plaintiff. AR at 59-60. Plaintiff's argument that the ALJ erred in posing a hypothetical to the vocational expert is really an argument that the ALJ erred in determining plaintiff's RFC. As discussed, the court has concluded no error by the ALJ with respect to plaintiff's RFC. As such, there was no error in the hypothetical, and no error at step four.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: March 26, 2021

SHERI PYM
United States Magistrate Judge